# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DEVRY INC. and GLOBAL EDUCATION INTERNATIONAL INC., | ) ) ) ) | |
| | ) | No. 06 C 3364 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Ronald A. Guzmán |
| INTERNATIONAL UNIVERSITY OF NURSING d/b/a ROBERT ROSS INTERNATIONAL UNIVERSITY OF NURSING, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued defendant for trademark infringement, unfair competition and its alleged violations of the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. The case was tried to the Court from June 23-25, 2008. This Order constitutes the Court's findings of fact and conclusions of law.

### Parties and Background

Plaintiff DeVry Inc. ("DeVry"), is a Delaware corporation located in Illinois and the ultimate parent company of plaintiff Global Education International Inc. ("Global"). (Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 1, 4.) Global is a Barbados corporation located in Barbados and the parent company of Ross University School of Medicine, which is in Dominica, and Ross University School of Veterinary Medicine, which is in St. Kitts (collectively, "Ross University"). (*Id.* ¶¶ 3, 4, 6, 7.) Ross University's administrative offices

are in New Jersey.  (*Id.* ¶ 5.)   Defendant International University of Nursing ("IUON") is a Delaware limited liability corporation with an administrative office in New York.  (*Id.* ¶ 9.)

In 1978, Dr. Robert Ross established a medical school in Dominica.  (*Id.* ¶ 11.)  In 1983, the school formally adopted the name Ross University School of Medicine.  (*Id.*)

In 1981, Robert Ross established a school of veterinary medicine in Dominica.  (*Id.* ¶ 12.)  In 1983, he moved the school to St. Kitts and named it Ross University School of Veterinary Medicine.  (*Id.*)  Both schools were owned by Dominica Management, Inc., a company wholly owned by Ross.  (PX 58 at D01283 (admitted Trial Tr. at 269).)

In February 2000, Ross sold ninety percent of his interest in Dominica Management, Inc. to Leeds Equity Partners III, L.P. and J.W. Childs Equity Partners II, L.P. for approximately $100 million.  (*Id.* at D01283-01284.)  The sale was memorialized in a Recapitalization Agreement, which Ross signed on February 19, 2000.  (*Id.* at D01275, D01366.)  Section 6.15(a) of the agreement states:

> [Dominica Management, Inc. and Ross University] own and possess all right, title and interest in and to all Intellectual Property Rights created or developed by or under the direction or supervision of [Dominica Management, Inc. and Ross University] or [Robert Ross] relating to the business of [Dominica Management, Inc. and Ross University] or to the actual or demonstratively anticipated research or development conducted by [Dominica Management, Inc. and Ross University].

(*Id.* at D01323.)  The term "Intellectual Property Rights" is defined to include "trademarks, service marks, trade dress, trade names, logos and corporate names and registrations and applications for registration thereof and Internet domain names together with all of the goodwill associated therewith."  (*Id.* at D01350.)

2

In 2003, DeVry purchased all of the shares of Dominica Management, Inc. from the Leeds and Childs partnerships and Robert Ross, paying Ross $48 million for his remaining ten percent interest in the company. (Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 22, 24.) After this sale, Robert Ross no longer had any connection to or affiliation with Ross University. (*Id.* ¶ 25.)

In May 2005, Robert Ross opened IUON in St. Kitts. (Pls.' Resp. Def.'s Proposed Findings of Fact ¶¶ 26, 28, 31.) In August 2005, IUON changed its name to "Robert Ross International University of Nursing," a name that it used until December 2007. (Def.'s Resp. Pls.' Proposed Findings of Fact ¶ 26.) IUON is not connected to or affiliated with DeVry, Global or Ross University. (*Id.* ¶ 10.)

The IUON campus is about a half-mile away from the Ross veterinary school and lies between it and Basseterre, the major city in St. Kitts. (*Id.* ¶¶ 29-30.) Thus, it is difficult to get to the Ross campus from Basseterre or the St. Kitts airport without passing IUON. (*Id.* ¶ 30.) There is a large sign in front of the Ross veterinary school that reads "ROSS UNIVERSITY School of Veterinary Medicine." (*Id.* ¶ 48; PX 15 (admitted Trial Tr. at 268-69).) From October 2005 until November of 2007, there was a large sign in front of defendant's campus that read "ROBERT ROSS International University of Nursing." (Def.'s Resp. Pls.' Proposed Findings of Fact ¶ 49; PX 15.)

## **Jurisdiction**

Plaintiff seeks only injunctive relief, claims that IUON says are moot because it has stopped using "Robert Ross" as a trade name or mark. However, voluntary cessation of unlawful conduct does not necessarily moot a claim for injunctive relief. *BMG Music v.*

3

*Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005). Rather, an injunction may still be appropriate "to ensure that the misconduct does not recur as soon as the case ends." *Id.* Such is the case here. The record shows that Robert Ross, IUON's chairman and founder, attaches his name to everything he does and has no qualms about changing IUON's name, having done so twice in its four-year existence. (Ross Dep. at 15, 18, 24-26.) Those facts, coupled with IUON's argument that it can make "fair and descriptive" use of Ross' name without violating plaintiffs' rights, establish that plaintiffs have live claims for injunctive relief.

The Court has jurisdiction over the trademark and federal unfair competition claims pursuant to 28 U.S.C. § 1338 and the state law claims pursuant to 28 U.S.C. § 1367. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 281, 285 (1952) (holding that "a United States District Court has jurisdiction to award relief to an American corporation against acts of trade-mark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States").

## **Claims**

To succeed on their trademark infringement claims, federal and state unfair competition and state statutory claims, plaintiffs must prove that they have protectable trademarks and IUON's misuse of those marks creates a "likelihood of confusion" as to the origin of its services. *Int'l Kennel Club of Chi, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1084 (7th Cir. 1988) (trademark); *Nat'l Counsel of Y.M.C.A. v. Human Kinetics Publishers, Inc*., No. 05 C 5034, 2006 WL 752950, at *3 (N.D. Ill. Mar. 15, 2006) (federal and state unfair competition and state statutory claims).

As to the first element, the Court finds that since 1978, plaintiffs have used the names and marks ROSS and ROSS UNIVERSITY in U.S. commerce for, among other things, recruiting American students to its schools. (Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 44, 46; PX 8, 11 (admitted Tr. at 56-57, 60).) The evidence also shows that plaintiffs own U.S. Trademark/Service Mark Registration Numbers: (1) 3,237,762 and 3,098,546 for the mark ROSS UNIVERSITY and 2,990,127 for the mark ROSS for, among other things, "educational services, namely, conducting continuing education courses of instruction in the fields of medicine and veterinary medicine and conducting courses of instruction for the training of medical and veterinary assistants"; (2) 3,043,741 for the mark ROSS UNIVERSITY and 3,043,743 for the mark ROSS for, among other things, "educational services, namely, conducting courses of instruction in the fields of medicine and veterinary medicine" and "career counseling"; and (3) 2,939,564 for the mark ROSS UNIVERSITY for, among other things, "educational services, namely, conducting courses of instruction in the fields of medicine an veterinary medicine." (PX 1-6 (admitted Tr. at 34-36).) Defendant does not attack the presumption of trademark validity that arises from these registrations, and the Court finds that plaintiffs' marks are valid and protectable. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . .").

To determine whether IUON is using one of plaintiffs' marks or a mark so similar to it that consumers are likely to be confused as to the origin of IUON's services, the Court considers:

> the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the

5

> strength of the complainant[s'] mark[s]; [the existence of] actual confusion; and [whether IUON intended] to palm off [its] products as those of another.

*Int'l Kennel Club*, 846 F.2d at 1087. Though the relative importance of each factor varies from case to case, the similarity, intent and actual confusion factors are generally accorded substantial weight. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001).

The parties' marks are strikingly similar in appearance and suggestion. Both consist of two lines of text in which the word "ROSS" is written entirely in capital letters and appears above the word "University," which is in much smaller type. (*See* PX 7-9, 11-12, 15 (admitted Trial Tr. at 53-57, 60-61, 268-69).) Both marks are dominated by the word "ROSS," which is also the shorthand designation plaintiffs' students, faculty and others use for the Ross schools. (PX 8, 80 & 81 (admitted Trial Tr. at 56-57, 295); Tr. at 43-45, 190; Ross Dep. at 7-8, 18); *see Int'l Kennel Club*, 846 F.2d at 1087-88 ("[T]his circuit has recognized the rule that if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." (quotation omitted)). The marks are so similar that deliveries of all kinds, including mail, food, educational materials and medical supplies, meant for IUON have been sent to the Ross veterinary school and IUON has been referred to in the media as Ross University. (PX 31 (admitted Trial Tr. at 124-27); Trial Tr. at 394-413, 507.)

The record establishes, however, that IUON and Ross University do not offer identical services or compete directly for students. (Trial Tr. at 45-46, 143-46, 463-66, 493-95 (testimony that Ross solicits college graduates while IUON solicits consumers with a high school diploma or associate's degree)); *see Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 548 (7th Cir. 1982) ("If firms do not compete directly, it is harder to show that consumers

6

are likely to be confused by similar terms . . . ."). In this case, however, the lack of direct competition does not innoculate against confusion.

Though the parties offer different programs, both provide offshore medical education that is recognized by U.S.-licensing authorities – a unique commercial niche. (Trial Tr. at 184, 465-66, 493-94; Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 6-7, 26, 28.) Because the universe of such schools is limited, the consumers plaintiffs target are likely to visit the same web sites and consult the same sources of information as those targeted by defendant. (*Id.*) Further, given both parties' use of the word "university," which connotes an institution comprised of many different schools, those consumers are likely to assume that each "Ross" school is related to the others. (Trial Tr. at 41-42, 537-38); *see Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001) (stating that defendant's product is similar to plaintiff's if consumers could reasonably think that it comes from or is "affiliated with, connected with, or sponsored by, the trademark owner" (quotation omitted)).[1]

With respect to the third factor, the evidence shows that there is substantial overlap in the area and manner in which the parties use their marks to promote their educational services. *See CAE*, 267 F.3d at 681 (stating that the area-and-manner-of use factor "assesses whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties"). For more than two years, the IUON campus on St. Kitts was identified by a large sign that said: "ROBERT ROSS International University of Nursing." (Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 29-30; PX 15; Tr. at 462-63.) During the same period, the campus of the Ross veterinary school, less than a mile away, was identified by a large sign that said: "ROSS UNIVERSITY School of Veterinary Medicine." (PX 15.)

---

[1] The parties will compete directly for students if, as it has announced, IUON opens the "International School of Medicine" in St. Kitts.

7

Moreover, the parties use their marks in the same publications, at the same U.S. career fairs and on the same web sites to promote their schools and solicit students and staff. (PX 11, 14, 70-72, 90, 99-103 (admitted Trial Tr. at 60-61, 64-67, 75-86, 321); Trial Tr. at 264, 305-12, 321-24, 537-38.)

The parties addressed the next factor, the level of care exercised by consumers, only tangentially. Both offered evidence that consumers of offshore education, most of whom want to practice in the United States, research their options carefully because the licensing authorities in this country do not recognize the degrees conferred by all Caribbean schools. (*See* Trial Tr. at 47-48, 52, 476.) There is also evidence that Ross University, which is approved by those authorities, strives "to differentiate [itself] from the other schools" and to "let [consumers] know" that it can "[give] them what they need" to qualify for a U.S. license. (*Id.* at 48.) Taken together, this evidence suggests that consumers of offshore education try to distinguish schools that are acceptable to U.S.-licensing authorities from those that are not. But it says nothing about the care, if any, that consumers use to distinguish among offshore schools that are approved by those authorities, as are IUON and Ross University, let alone between two such schools with markedly similar names.

The evidence with respect to the next factor, the strength of plaintiffs' marks, is mixed. *See CAE*, 267 F.3d at 684 ("The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source."). Plaintiffs' marks are relatively weak among potential U.S. consumers of traditional medical education, largely because there are U.S.-based medical institutions that use the word "Ross" in their names. (DX 37-48 (admitted Trial Tr. at 512-16).) But the marks are quite strong among potential U.S. consumers of offshore medical

education, the distinct and identifiable consumer group from which plaintiffs' student-body is generally drawn, because of plaintiffs' twenty-five-year history of using the marks, the lack of similar marks in the offshore education sector, the large number of Ross University graduates and the millions of dollars plaintiffs spend annually in advertising. (Trial Tr. at 43-46, 51-58, 86-88, 190-91, 264); *see Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978) (stating that a mark is strong if "the public has already been educated to accept it as the hallmark of a particular source" because "it is unique" or "has been the subject of wide and intensive advertisement" (quotations omitted)).

Not surprisingly, given the foregoing discussion, the record also contains evidence of actual confusion among consumers, including: (1) comments posted on ValueMD.com, an internet message board used by consumers of offshore medical education, that refer to IUON as "Ross nursing school," "Ross," or the "Ross school" (*see* PX 16-20 (admitted Trial Tr. at 543-44); Trial Tr. at 310-11, 326-27)[2]; (2) testimony by Dr. Nancy Perri, the Dean of Clinical Services for the Ross University medical school, that two women who heard her presentation at a March 2006 seminar asked her why she had not mentioned Ross' nursing school (Trial Tr. at 192-94); (3) testimony by Dr. Mary Coleman, Dean of the Ross University medical school, that two participants in a July 2006 healthcare symposium complained to her about the Ross nursing school (*id.* at 339-42); (4) testimony by Leslie Shaver, Associate Director of Admissions for the Ross schools, that about half of the students who visited her table during a March 2008 career fair at Benedictine University asked her about the relationship between Ross University and IUON (*Id.* at 324-26); and (5) testimony by Dr. David DeYoung, Dean of the Ross University veterinary school, that

---

[2]There are some postings that say Robert Ross is no longer associated with Ross University but not enough to counter the confusion and damage caused by defendant's prominent use of the term "Ross" in its advertising and promotion.

during a September 2006 visit to the campus, members of a survey team from the American Veterinary Medical Association asked him how Ross University would divide its resources between the veterinary school and the nursing school it operated on the same campus. (*Id.* at 351-52).³ This evidence strongly suggests that consumers are likely to be confused as to the origin of defendant's services. *See CAE,* 267 F.3d at 678.

Finally, the record shows that IUON adopted the contested mark to palm off its services as those of Ross University. (Trial Tr. at 86-88.) In the twenty-five years since it was founded, Ross University has produced almost 9,000 doctors and veterinarians. (*Id.* at 88-89.) Sixty percent of those doctors and veterinarians graduated in the eight-year period *after* Robert Ross sold his majority stake in the school. (*Id.*) Further, since his departure, Ross University has expanded its facilities, improved its faculty-to-student ratios, upgraded its clinical education programs, placed more students in U.S. medical institutions for clinical rotations and doubled its annual expenditures for promotion and advertising. (*Id.* at 43-44, 86-90, 190-91, 264.) Given that evidence, and the timing of IUON's name change – "Robert Ross" was added months after IUON opened and when its 900-student facility had an enrollment of only fifty-five – it is difficult to view defendant's action as anything but an attempt to profit from the Ross University brand. (Def.'s Resp. Pls.' Proposed Findings of Fact ¶¶ 26, 31, 145-46; PX 64, 70, 78-81, 83, 85 (admitted Tr. at 64, 295, 300, 302).)

In sum, the Court finds that the name and mark "ROBERT ROSS International University of Nursing" are confusingly similar to plaintiffs' ROSS UNIVERSITY and ROSS names and marks. IUON's mark is strikingly similar to plaintiffs' marks in appearance and

---

³Because the survey team voiced its concerns, Dr. DeYoung was able to dispel the confusion. (*Id.* at 352.) Had the team not consulted him, Ross University might have received a negative report from the American Veterinary Medical Association without knowing why.

suggestion; both parties use the marks to refer to institutions that provide offshore medical education; the marks are, or have been, viewed in close proximity in St. Kitts, the United States and elsewhere; the parties use the same channels to promote their schools and recruit students and staff; numerous people who have seen the marks, consumers and non-consumers alike, have wrongly inferred that IUON is, or is related to, Ross University; and defendant has intentionally engendered that confusion to profit from the reputation of plaintiffs' schools. Given this evidence, the Court holds that plaintiffs are entitled to judgment on all of its claims.

Next, the Court considers whether plaintiffs are entitled to the injunctive relief they seek. They are if the evidence shows that they have suffered an irreparable injury for which there is no adequate legal remedy, the balance of hardships militates in favor of such relief and issuing an injunction will not disserve the public interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)

The record amply demonstrates that plaintiffs have suffered irreparable harm for which there is no adequate legal remedy. There is no dispute that an educational institution like Ross University must develop and maintain a good reputation to attract the students, faculty, clinical affiliations and other resources it needs to survive. (Def.'s Resp. Pls.' Proposed Findings Fact ¶¶ 137-38; Tr. at 45-47, 237-38.) Thus far, the record shows, plaintiffs have been successful in doing that. (*Id.* at 188 at 345-46.) If, however, consumers confuse the Ross schools with IUON, or assume that there is a relationship between them, any unfavorable information a consumer hears about or negative experience he has with IUON will be imputed to plaintiffs' schools. This kind of guilt-by-association harm, which can be inflicted on Ross University without plaintiffs even knowing it, is neither quantifiable

or reparable. *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (stating that the damage caused by trademark infringement, the endangerment of plaintiff's reputation "by the acts of another," are "by their very nature irreparable and not susceptible of adequate measurement"(quotation omitted)).

The balance of hardships favors issuing an injunction as well. According to defendant, Robert Ross attached his name to IUON primarily to satisfy his ego. (Ross Dep. at 24-25; *see* Tr. at 467-68.) Given the potential devastation plaintiffs would face if an injunction is not issued, the slight to one man's pride carries little weight. The fact that Ross will be barred temporarily from using his name in connection with offshore medical education is also not, under the circumstances of this case, a substantial hardship. When Robert Ross sold Ross University and its associated trademarks – for nearly $150 million – he also sold the right to use his name in a mark confusingly similar to the trademarks he sold. Thus, his temporary inability to generate more revenue from his name, when doing so diminishes the value of the trademarks for which he was handsomely paid, cannot be viewed as a hardship. *See Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979) (upholding injunction barring seller of a construction company from publicizing his participation in a construction venture beyond the non-competition period to which the parties had agreed, saying "courts will be especially alert to foreclose attempts by the seller to keep for himself the essential thing he sold, and also keep the price he got for it." (quotation omitted)).[4]

Finally, the public will not be harmed if the requested injunction is issued. In fact, because it will clarify for consumers the source of the services each party provides, the injunction will serve the public interest.

---

[4] Further, to the extent it is a hardship, it is one of IUON's own making as the record shows its addition of "ROBERT ROSS" to its name was a blatant attempt to trade on plaintiffs' reputation.

For all of these reasons, the Court orders as follows:

It is ORDERED and ADJUDGED that Defendant International University of Nursing, together with its administrators, officers, directors, agents, principals, shareholders, servants, representatives, employees, parents, subsidiaries, affiliates, related companies, licensees, successors, assigns, assignees, and all persons or entities in active concert or participation with it having notice of this order, is enjoined and restrained from doing, causing, aiding or abetting any of the following for a period of two years from the date of this Order:

(a) using the terms ROSS, ROBERT ROSS, DR. ROBERT ROSS, DR. ROSS, or any other confusingly similar term, alone or in combination with any other words, names, symbols or devices, in any trademark, service mark, trade name, company name, or other designation as an identifier for defendant's nursing school;

(b) engaging in any activities that, directly or indirectly, trade upon the reputation or goodwill of Plaintiffs, Ross University, Ross University School of Medicine, Ross University School of Veterinary Medicine, the ROSS marks or the ROSS UNIVERSITY marks;

(c) infringing, directly or indirectly, the ROSS marks or the ROSS UNIVERSITY marks;

(d) using the words "Ross," "Robert Ross," "Dr. Robert Ross" or "Robert Ross International University of Nursing," alone or in combination with any other words, names, symbols or devices, to identify or refer to defendant's nursing school in any advertising, employment listings, catalogs, signs, letterhead, business cards, promotional materials, email addresses, web sites or other materials in any media to sell, directly or indirectly, offer to

sell, advertise, market or promote any good, service or institution or to render any service related to medical education;

(e) using "Founded by Dr. Robert Ross" or any similar phrase or designation, alone or in combination with any other words, names, symbols or devices, referring to or identifying Robert Ross as the "founder" of Ross University, stating or implying that Robert Ross "founded" Ross University, using any designation or making any statement implying that Robert Ross is or was affiliated or associated with Plaintiffs, Ross University, Ross University School of Medicine or Ross University School of Veterinary Medicine or that defendant's founder, officers or employees are or were associated with Plaintiffs, Ross University, Ross University School of Medicine or Ross University School of Veterinary Medicine, in any advertising, employment listings, catalogs, signs, letterhead, business cards, promotional materials, email addresses, web sites or other materials in any media to sell, directly or indirectly, offer to sell, identify, refer to, advertise, promote or market defendant's nursing school or its services, any other good, service or institution related to medical education or to render any service related to medical education

(f) using the ROSS marks or the ROSS UNIVERSITY marks or any mark or designation incorporating the word "ROSS" in a manner that causes confusion, or is likely to confuse or deceive Plaintiffs' customers, Defendant's customers or the public into believing that the goods or services offered by defendant are approved or sponsored by, or are otherwise associated, affiliated or connected with, Plaintiffs, Ross University, Ross University School of Medicine or Ross University School of Veterinary Medicine in any advertising, employment listings, catalogs, signs, letterhead, business cards, promotional materials, email addresses, web sites or other materials in any media to sell, offer to sell, promote, advertise

or market Defendant's nursing school, its goods or services, or any other good, service or institution related to medical education or render any service related to medical education;

(g) passing off, inducing, or enabling others to pass off Defendant's services as authorized, or otherwise emanating from or sponsored by Plaintiffs, Ross University, Ross University School of Medicine or Ross University School of Veterinary Medicine;

(h) using, in any manner, the designation "Ross University" or any other designation or mark that is identical to or confusingly similar to the ROSS marks or the ROSS UNIVERSITY marks, as a domain name, directory name, or other such computer address, in buried code or in metatags on any web pages for any web sites owned, maintained, sponsored or approved by, associated with, or under the control of defendant;

(i) using in relation to the direct or indirect sale, advertising, marketing or promotion of any service, product or institution related to medical education any sign, advertisement, internet domain name, web site, promotional material, promotional communication, or printed or electronic media containing the terms "Ross University," "Ross University School of Medicine," or "Ross University School of Veterinary Medicine" or having a web site with a link to use of such terms;

(j) purchasing or using any form of internet advertising or "adwords" containing or incorporating the terms "Ross" or "Ross University" or any confusingly similar mark; and

(k) except as specifically as set forth in this Order, committing any other act that is likely to cause purchasers or consumers of Defendant's services to believe that Defendant's services are affiliated, associated or connected with Plaintiffs, Ross University, Ross University School of Medicine or Ross University School of Veterinary Medicine, or plaintiffs' registered ROSS and ROSS UNIVERSITY marks.

Defendant is ordered to delete and remove all references to Ross University, all uses of "Founded by Dr. Robert Ross" and all statements identifying Robert Ross as the "founder" of Ross University, from any and all advertisements, employment listings, signs, letterhead, promotional materials and web sites owned, maintained, sponsored or approved by or otherwise associated with or under the control of Defendant and to destroy all existing printed materials containing any such reference within seven days of the date of this Order.

The Court shall retain jurisdiction over the parties and this case to enforce the terms of this Order.

**SO ORDERED.**  **ENTERED:**

**June 30, 2009**

_Ronald A. Guzman_
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**